472

CLERK OF COURT
SUPREME COURT. CNMI
FILED

93 FEB 5 P2: 30

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ISABELLA LIZAMA WESTENBERGER, Administratrix of the Estate of Ignacio C. Lizama, Deceased, | ) ) ) ) | APPEAL NO. 91-038 CIVIL ACTION NO. 88-878 |
| Plaintiff/Appellant, | ) ) | |
| vs. | ) ) | OPINION |
| ESTEFANIA ATALIG, | ) ) | |
| Defendant/Appellee. | ) ) ) | |

Argued and Submitted September 3, 1992

Counsel for Plaintiff/Appellant: Juan T. Lizama
P.O. Box 1508
Saipan, MP 96950

Counsel for Defendant/Appellee: WISEMAN & EASON
P.O. Box 2607
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

## BACKGROUND

Isabella Lizama Westenberger ("Isabella" or "Administratrix"), as administratrix of the estate of Ignacio C. Lizama ("Lizama"), deceased, filed suit against Estefania Atalig ("Estefania") on December 1, 1988, on behalf of the estate, to seek specific performance of an oral land exchange regarding Lot No. 005 R 15, (hereafter Lot No. 15) situated in Songsong Village, Rota, and for

general damages. The complaint alleged that sometime in 1959, Lizama received the disputed land from Estefania's father, Juan Jose T. Atalig ("Atalig"), through an oral agreement to exchange. In exchange for Lot No. 15, Lizama transferred to Atalig his village lot, No. 004 R 36, (hereafter Lot No. 36), also situated in Songsong Village. The complaint further alleged that because Estefania has occupied Lot No. 15 since 1985 without permission of the Administratrix or the other heirs of Lizama they (not the estate of Lizama) have suffered general damages in the amount of $20,000.[1]

The case went to trial in January and February of 1990, and on January 3, 1991, the trial court issued an order containing its findings of fact and conclusions of law. The court found as follows: that there was an oral agreement between Lizama and Atalig to exchange Lizama's Lot No. 36 for Atalig's Lot No. 15; that Estefania constructed a wooden house on Lot No. 15 in 1979 and in 1987 replaced the wooden house with a concrete house; and that Estefania and her mother have been living on Lot 15 since 1979.

The trial court further found "that the defendant [Estefania] knew of this oral agreement [between Lizama and Atalig] and ran the risk of losing the property when she built the house on Lot No. 15." Finally, the court found that Isabella was advised in 1981 by the Land Commission to bring this action.

Since it found that the Administratrix was dilatory in filing this action, the trial court concluded that Isabella was not

---

[1] The complaint is silent as to what the general damages consisted of.

entitled to damages. It concluded, however, that she must pay restitution to Estefania in an amount equal to the replacement cost of Estefania's house and other improvements made on Lot 15. The court granted the request for specific performance and ordered the parties to execute quitclaim deeds of exchange after restitution had been settled. On November 14, 1991, the trial court ordered Isabella to pay $50,000.00 to Estefania as restitution.

The Administratrix timely appealed.[2]

On appeal, Isabella contends that the trial court erred (1) in awarding restitution to Estefania;[3] (2) in basing the restitution on the cost of replacing the improvements on the property, rather than the actual value of the improvements; and (3) in not offsetting the amount of restitution with the rental value of Estefania's unlawful occupancy of the property.

---

[2] We are not persuaded by Estefania's argument that the appeal was untimely. Estefania argues that the January 3, 1991, order is a final judgment for two reasons. First, because it used the phrase "NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED." Second, because this language is contained on page 15 of the order, while the rest of the order is contained on pages 1 through 14, thus, it is a "judgment ... set forth in a separate document," in accordance with Rule 58(2) Com.R.Civ.P. (Emphasis added.) Therefore, the appeal should have been filed within 30 days of January 3, 1991.

These arguments have no merit. The use of the phrase "ordered, adjudged and decreed" per se does not make an order a final judgment. Estefania's position that putting such language on the 15th page of a 16-page order constitutes the setting forth of a judgment on a separate document, as required by Rule 58(2), is misleading.

Ordinarily, an order which establishes liability without fixing the amount of recovery is not final. Lucky v. Tokai, No. 91-003, (N.M.I. April 20, 1992); Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737 (1976). But it may be final if the determination of damages will be mechanical and uncontroversial. Parks v. Pavkovic, 753 F.2d 1397 (7th Cir. 1985). To be final, for appeal purposes, a judgment must fully inform the losing party of the extent of the remedy afforded against her. Kearns v. Shillinger, 823 F.2d 399 (10th Cir. 1987). Here, the order of January 3, 1991, did not fix the amount of restitution to be paid; the amount of restitution was highly controversial; and the order failed to inform Isabella of the extent of the remedy afforded against her, until the order of restitution was issued. Consequently, the order of January 3, 1991, was not final for purposes of an appeal.

We suggest that when a party contends that we lack jurisdiction, that party should move to dismiss on that ground in the early stage of the appeal. If we do not have jurisdiction, we should make that decision before we get into the merits of the appeal.

[3] Whether Estefania is entitled to restitution under the facts of this case is a question of law which we review de novo. Since we will not address the second and third issues, as explained infra, there is no need to state the applicable standard of review for such issues.

## ANALYSIS

For the reasons set forth below, we hold that Estefania is not, as a matter of law, entitled to restitution. Therefore, we need not address the standard by which the restitution should be computed or whether such restitution should be offset by the rental value of Estefania's unauthorized occupancy of the land.[4]

We have previously held that since the CNMI has no "betterment" statute permitting reimbursement for improvements constructed in good faith on property of another by mistake, and since there is no local customary law on the point, the applicable law is the Restatement of Restitution (1937). Repeki v. MAC Homes, No. 90-0002 (N.M.I. March 14, 1991).[5]

In MAC Homes, we ruled that an improver of another person's real property is entitled to restitution for the improvement if the improver (1) is in possession of the property adverse to the owner, (2) possesses under color or claim of title, and (3) constructs the improvement in good faith. MAC Homes, slip op. at 11. There is no question that Estefania possesses the property adverse to the estate of Lizama under claim of title. However, as in MAC Homes, our decision in this case hinges upon analysis of the third criterion, the requirement of good faith.

---

[4] The complaint neither alleged nor prayed for specific damages for mesne profits. (Mesne profit is the value of the use of land wrongfully occupied and is commonly measured in terms of rents and profits. Black's Law Dictionary, 892 (5th Ed. 1979).) No evidence was adduced at trial to establish rental value for the use of the land by Estefania. This issue is being raised for the first time on appeal and it raises both legal and factual questions. Therefore, we shall not address it. In re Seman, No. 90-048 (N.M.I. April 3, 1992).

[5] We note that although the trial court order was issued prior to our decision in MAC Homes, the same rule of law applied.

Good faith exists when there is "an honest belief on the part of the occupant that [she] has secured a good title to the property in question, and that there are no adverse claims." MAC Homes at 16. In MAC Homes, we also stated:

> As a general rule, an occupant is regarded as an occupant in bad faith and not entitled to compensation for [her] improvements, where, and only where, [she] has either actual notice of the adverse title, or what is equivalent thereto, such as where there is brought home to [her] notice of some fact or circumstance that would put a [person] of ordinary prudence to such an inquiry as would, if honestly followed, lead to a knowledge of the adverse title.

Id. at 17, quoting, 47 C.J.S. Improvements § 7 (1944).

The crucial finding of fact made by the trial court relevant to this issue is that Estefania knew of the oral agreement between Lizama and Atalig and ran the risk of losing the property when she built the house on Lot No. 15.[6] This means that Estefania had actual knowledge of the oral agreement and knowingly risked losing the property when she made the improvements thereon.[7] The factual findings of the trial court negates good faith.

The trial court's finding of fact regarding Estefania's knowledge of the oral agreement is not disputed. Therefore, we are bound by that finding[8] and must apply the law to the facts. In

---

[6] Estefania testified that her family moved from Lot No. 15 to Lot No. 36 in 1959 when she was 20 years old. She also heard about the exchange in 1977 and moved into a house on Lot No. 36 when she returned to Rota from Saipan. She moved onto Lot No. 15 thereafter.

[7] Even if she did not have actual knowledge, the finding establishes that she at least had the equivalent thereto. She had notice of some fact or circumstance that would put her to such an inquiry as would, if honestly followed, lead to her knowledge of the adverse title.

[8] In re Estate of Rofag, No. 89-019 (N.M.I. February 22, 1991).

477

doing so, we must conclude that Estefania did not make the improvements on Lot 15 in good faith because she knew that her father had exchanged the land for Lizama's land. For that reason, she is not entitled to restitution under the principles set forth in MAC Homes.

## CONCLUSION

For the above reasons, we REVERSE and VACATE that portion of the trial court order dated January 3, 1991, granting Estefania restitution and the order of restitution dated November 14, 1991, and REMAND this case for further proceedings consistent with this opinion.

Dated this _5th_ day of _February_, 1993.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Associate Justice

JESUS C. BORJA, Associate Justice